IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

  v.

RONALD BRVENIK
  Petitioner.

Criminal No. AW-03-0302

## MEMORANDUM OPINION

Currently before the Court is Petitioner's application for reimbursement of attorney's fees and reasonable expenses for Petitioner's successful defense of criminal charges. The petition is made pursuant to the Hyde Amendment, 18 U.S.C. § 3006A (statutory note), Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997). The parties have extensively briefed their respective positions and the Court heard oral arguments on the petition on April 20, 2007. The Court has carefully considered the arguments made in support of and in opposition to Petitioner's request. For the reasons stated more fully below, the Court DENIES Petitioner's Hyde Amendment application.

## BACKGROUND

Petitioner Ronald Brvenik was a real estate appraiser licensed in the state of Maryland. He operated an appraisal business under the name R&M Appraisal Service ("R&M"). Pursuant to its Maryland mortgage fraud initiative, the FBI began investigating John Bryant ("Bryant") as the "flipper" in a Prince George's County "house flipping" scheme. The FBI discovered that the appraisals prepared by Brvenik for homes that Bryant "flipped" contained false information about the condition of the property and false statements as to the current owner of the property.

In April 2001, the Grand Jury began taking testimony from investigators about the house flipping scheme. The Grand Jury heard testimony regarding Bryant's general scheme, the

importance of accurate appraisals, and the role that Brvenik's allegedly false appraisals played in the scheme. On January 5, 2003, the Grand Jury returned an indictment against Petitioner and nine co-defendants for their roles in the Bryant "flipping" scheme. On July 28, 2004, the Grand Jury returned a superseding indictment against Petitioner and the co-defendants.

On June 25, 2005, Bryant pled guilty to conspiracy to make false statements related to HUD-insured loans and wire fraud. In support of his guilty plea, Bryant admitted to knowingly conspiring with Brvenik to defraud mortgage lenders and financial institutions. Bryant also admitted that he secured the assistance of Petitioner, who completed false and fraudulent appraisals that were relied upon by HUD and other conventional lenders. While preparing for trial, the Government began questioning Bryant's credibility as a witness because his testimony contradicted evidence obtained by the FBI. Although the Government had documentary evidence supporting Brvenik's involvement in the "flipping" scheme, the Government elected to dismiss the case after attempting to exercise a plea agreement with Brvenik because it doubted its ability to prove Brvenik's guilt beyond a reasonable doubt.

Petitioner commenced this action on December 28, 2004 in the United States District Court of Maryland. Specifically, Brvenik argues that he is entitled to reimbursement by the Government for attorneys' fees and reasonable expenses relating to defending the criminal charges against him. Furthermore, Petitioner alleges that the Government's prosecution of him was vexatious, frivolous, or in bad faith because the Government knew that it did not have a case against Petitioner, but continued to pursue prosecution in an effort to coerce him to plead guilty.

## STANDARD OF REVIEW

Under the Hyde Amendment, 18 U.S.C. § 3006A, a court has the discretion to award

2

attorneys' fees and costs to individuals who have been subject to vexatious, frivolous, or bad faith prosecution. *See United States v. Gugnani*, F. Supp. 2d 538, 542 (D. Md. 2002). The burden of proof rests with the petitioner in proving by a preponderance of the evidence:

> (1) that the case was pending on or after November 26, 1997, the date of the enactment of the Hyde Amendment;
> (2) that the case was a criminal case;
> (3) that the Petitioner was not represented by assigned counsel paid for by the public;
> (4) that the Petitioner was the prevailing party;
> (5) that the prosecution was vexatious, frivolous, or in bad faith;
> (6) that the attorney's fees were reasonable; and
> (7) that there are no special circumstances that would make such an award unjust.

*United States v. Bunn*, 215 F.3d 430, 436 (4th Cir. 2000) (citing *United States v. Pritt*, 77 F. Supp. 2d 743, 747 (S.D. W.Va. 1999)).

## DISCUSSION

The primary inquiry in the present case is whether the Government's prosecution of Brvenik was vexatious, frivolous, or in bad faith within the meaning of the Hyde Amendment. The Court turns first to the language of the statute. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977). The words "vexatious, frivolous, or in bad faith" are not defined in the statute. However, in the context of a Hyde Amendment application, this Court has defined vexatious as "without reasonable or probable cause or excuse." *United States v. Gugnani*, 178 F. Supp. 2d 538, 542 (D. Md. 2002) (internal quotations omitted). A frivolous action is considered one that is "'groundless with little prospect of success; [one] often brought to embarrass or annoy the defendant.'" *Id.* (quoting BLACK'S LAW DICTIONARY 668 (6th ed.1990)). Finally, bad faith, which requires more than bad judgment or negligence, "implies the conscious doing of a wrong because of dishonest

purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Id.* (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)). Therefore, in order to prevail on a Hyde Amendment application, the petitioner must show that the prosecution was groundless and maintained for an evil purpose.

## Purpose of the Amendment

The legislative history of the Hyde Amendment reinforces this narrow interpretation of the statute. The basic foundation of the Hyde Amendment originated from Representative John Murtha's proposed "amendment to an appropriations bill which would have provided reimbursement to members of Congress and their staffs who successfully defend themselves against a federal criminal prosecution." ELKAN ABRAMOWITZ & PETER SCHER, *The Hyde Amendment: Congress Creates a Toehold for Curbing Wrongful Prosecution*, THE CHAMPION, Mar. 1998, at 22. Motivated by Representative Murtha's proposed amendment, Representative Henry Hyde offered a broader version of the appropriations bill amendment that extended beyond members of Congress and their staff to all federal criminal defendants. 143 CONG. REC. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde noting that "[the application of Representative Murtha's proposed amendment to only Congressmen and congressional staff] is too narrow    it ought to be good enough for any citizen").

Along with broadening its parameters, Representative Hyde patterned his proposed amendment after the Equal Access to Justice Act ("EAJA"), which provides for the award of attorneys' fees and costs to prevailing private parties in civil actions against the government. *See* 28 U.S.C. §§ 2412(d)(1)(A)(1985). Representative Hyde's original proposed amendment borrowed the language of the EAJA, which requires that the government establish that its position was "substantially justified" in order to avoid paying the prevailing private party. *Id.* Specifically, the

4

original Hyde Amendment called for the payment of attorneys' fees and costs to the petitioner "unless the court finds that the position of the United States was substantially justified." 143 CONG. REC. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde).

Although the original language of the Hyde Amendment used the phrase "substantially justified," Representative Hyde described a more rigorous standard when discussing the need for the Amendment. *Id.* at 8792 (statement of Rep. Hyde)(describing the Hyde Amendment as a remedy for an individual who "has been unjustly, maliciously, improperly, abusively tried by the Government, by the faceless bureaucrats who hire a law firm or get a U.S. attorney looking for a notch on his gun"). Additionally, the language received overwhelming criticism from other Congressmen, President Clinton, and the Department of Justice. *See United States v. Gilbert*, 198 F.3d 1293, 1300-01 (11th Cir. 1999).

The Amendment's critics agreed on one common theme – the bar to recovering attorneys' fees under the proposed amendment was too low.  Representative David Skaggs discussed the need for formal hearings to allow the Department of Justice to comment on the provisions and noted that the provision should require that the government's conduct be "malicious" or "abusive." *See* 143 CONG. REC. H7786-04, H7791-92 (Sept. 24, 1997) (statement of Rep. Skaggs).  Representative Skaggs also "noted that the rigorous standard for a finding of frivolousness outlined by Hyde in his remarks on the floor was lacking from the amendment itself." *Gilbert*, 198 F.3d at 1300 (citing 143 CONG. REC., at H7792). Similarly, Representative Lynn Rivers warned about the potential "chilling effect" that the Amendment would have on federal prosecutions. *Gilbert*, 198 F.3d at 1301 (citing 143 CONG. REC., at H7793) (statement of Rep. Rivers)).  The Clinton Administration warned that the "substantial justification" bar would severely and negatively impact the federal criminal justice

system. 143 CONG. REC., at H7792 (statement of Rep. Skaggs) (quoting the Clinton Administration's reservations regarding the Hyde Amendment and its potential to "create a monetary incentive for criminal defense attorneys to generate additional litigation in cases in which prosecutors have in good faith brought sound charges").

Consequently, the Hyde Amendment was revised and a more rigorous standard replaced the original. *Gilbert*, 198 F.3d at 1301   The new standard, borrowed from the Firearms Owners' Protection Act of 1986, allowed for recovery of attorneys' fees only if the court finds that the government's prosecution was without foundation, vexatious, frivolous, or in bad faith. *Id.* at 1302 (citing 18 U.S.C. §§ 924(d)(s)(B)).   The Hyde Amendment employs a higher standard than the Firearms Owners' Protection Act of 1986 because it permits the refusal of attorneys' fees, even in situations where the prosecution was vexatious, frivolous, or in bad faith, if the court finds special circumstances that would make the award unjust. *See* Pub. L. No. 105-119, §617, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A).

With members of Congress still concerned about the repercussions of the standard, the Conference Committee implemented two final changes to the Hyde Amendment.   The first involved deleting "without foundation" from the description of the prosecution in order to require a criminal defendant to show more than that the prosecution was without foundation. *See Gilbert*, 198 F.3d at 1302. The other, more substantial change, switched the burden of making the requisite showing of a vexatious, frivolous, or bad faith prosecution from the government to the prevailing criminal defendant seeking attorney fees. *Id.* Against this backdrop, the Court turns to the facts of the instant case.

6

**The Prosecution of Brvenik**

Brvenik argues that the Government's prosecution was vexatious and frivolous because the evidence established his innocence, not his guilt. In determining whether the Government's prosecution was frivolous, the "essential inquiry is whether the [] prosecution was groundless, or brought to embarrass or annoy the Petitioner[,]" *United States v. Gugnani*, 178 F. Supp. 2d 538, 543 (D. Md. 2002); *see also In re Grand Jury*, 215 F.3d 430, 438 (4th Cir. 2000) ("[a] frivolous action is groundless . .  with little prospect of success"). A prosecution is vexatious when it is pursued 'without reasonable or probable cause or excuse." *In re Grand Jury*, 215 F.3d at 436; *see also United States v. Holland*, 34 F. Supp. 2d 346, 364 (E.D. Va. 1999) (stating that the proper inquiry is "whether a reasonable prosecutor should have concluded that the applicable law and the available evidence were insufficient to prove the [petitioner's] guilt beyond a reasonable doubt, and [] if so, was the continuation of the prosecution vexatious"); *United States v. Pritt*, 77 F. Supp. 2d 743, 747 (S.D. W. Va. 1999) (suggesting that vexatious implies more than "prosecutorial eagerness; [it] implies malice or invidiousness").

Brvenik argues that the Government's prosecution was vexatious and frivolous because two weeks before the November 30, 2004 trial date, the Government knew that it would have to dismiss the charges against him. Brvenik claims that the Government had no evidence to support the charges filed against him, but still attempted to get Brvenik to plead guilty by continually decreasing the seriousness of the punishment each time Petitioner refused to plead guilty. When the Government's inability to secure a guilty plea from Brvenik became apparent, the Government finally moved to dismiss the charges against him.

The Government contends that it had probable cause to indict Brvenik and that the Grand

Jury had sufficient evidence before it to make its determination that probable cause existed to indict Petitioner. Once the Government began questioning its ability to prove Brvenik's *mens rea* beyond a reasonable doubt due to the discovery of Bryant's contradictory statements, the Government decided to dismiss the case against Brvenik. Although the charges against Brvenik were ultimately dismissed, the prosecution of Brvenik was far from groundless. Not only did the Government have sufficient probable cause to obtain a Grand Jury indictment, but even without Bryant's testimony, the Government still had evidence implicating Brvenik in the fraudulent "flipping" scheme.

Government pursued an indictment on the theory that Brvenik had assisted Bryant in the "flipping" scheme by routinely completing false and fraudulent appraisals that were used by Bryant to defraud mortgage lenders and insurers. Although there may be some dispute as to whether Brvenik knew that he was involved in a fraudulent scheme, there is no real dispute that the appraisals contained false statements. Furthermore, the misleading appraisals bore what appears to be Brvenik's signature. Also, had the matter gone to trial, the Court cannot conclude that on these facts it would have been unreasonable for the Government to request an instruction on willful blindness to support its theory that Brvenik turned a blind eye to Bryant's fraudulent scheme. Considering the record and the indictment details, including Grand Jury testimony, appraisals, and settlement and loan files, the Court believes that the Government had sufficient basis for prosecuting Petitioner for his alleged role in the fraudulent "flipping" scheme. The Government had testimony from Bryant, although later discovered to be conflicting as to the nature and circumstances of his agreement with Brvenik, that indicated that Brvenik knowingly completed false appraisals for Bryant and that those appraisals were submitted to lenders and HUD, who both relied on the accuracy of those appraisals.

8

evidence shows that the Government's prosecution of Brvenik was not vexatious.

Brvenik also alleges that the Government acted in bad faith when it refused and resisted to provide him with any significant discovery concerning Brvenik's alleged fraudulent activities until two weeks before trial because the Government knew its case against Petitioner was weak.

Evidence of bad judgment or negligence is insufficient to prove bad faith. *See In re Grand Jury*, 215 F.3d at 436. Bad faith "implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity;      it contemplates a state of mind affirmatively operating with furtive design or ill will." *Id.* Petitioner's alleged discovery violations by the Government are without merit because this Court previously determined in this case that the Government had not committed any discovery violations alleged by Brvenik in his previously filed motion to dismiss. Brvenik has not convinced the Court that the Government's decision to prosecute him after securing an indictment based upon probable cause was in anyway motivated by an evil purpose or ill will.  Absent such a showing, Brvenik cannot establish that the prosecution was in bad faith.

The Court agrees with the Government that a distinction exists between the failure to prove guilt beyond reasonable doubt and the reasonableness of a prosecution. Brvenik's Hyde Amendment application rests on this distinction. Brvenik contends the prosecution was unreasonable, but the facts show that it was well within the Government's discretion to dismiss the charges against Brvenik once the Government doubted its ability to prove guilt beyond a reasonable doubt.

---

[1] Petitioner moves the Court to permit him to depose the Assistant United States Attorney ("AUSA") involved in the criminal prosecution. Brvenik contends that only by deposing the AUSA can he adequately determine what evidence the Government possessed and the mental state of the Government in proceeding with the prosecution. The Court notes that because prosecutors enjoy immunity for decisions made in their official capacity, Brvenik's request must be heavily scrutinized. Brvenik's extraordinary request is not warranted by the facts of this case, and will therefore be denied.

Brvenik's different view of the facts in this case does not make the Government's prosecution of him vexatious, frivolous, or in bad faith.  Prosecutors are allowed to evaluate and re-evaluate the evidence and strength of that evidence in making their decisions to charge a defendant and whether or not to continue a prosecution.  The Hyde Amendment was not designed to provide a remedy for a criminal defendant who is dismissed from a prosecution simply because the Government's evidence was weakened.  Such an interpretation of the Hyde Amendment would certainly have a chilling effect on the Government in making its prosecutorial decisions.  Based on the facts in the present case, Brvenik has failed to show the egregious and malicious prosecutorial conduct required to recover under the Hyde Amendment.  As such, his petition must be denied.

## CONCLUSION

For the aforementioned reasons, this Court DENIES Petitioner's request for reimbursement of attorney's fees and reasonable expenses for his successful defense of criminal charges. An Order consistent with this Opinion will follow.

5-29-07
Date

Alexander Williams, Jr.
United States District Judge

10